# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 22, 2018

Plaintiff-Appellee,

v

No. 324500
Livingston Circuit Court
LC Nos. 13-021340-FH;
13-021416-FH

LEONARD LEWIS KING,

Defendant-Appellant.

ON REMAND

Before: BOONSTRA, P.J., and K. F. KELLY and MURRAY, JJ.

PER CURIAM.

## I. INTRODUCTION

Defendant, Leonard Lewis King, was convicted of second-degree home invasion, MCL 750.110a(3), attempted third-degree home invasion, MCL 750.110a(4), possession of burglar tools, MCL 750.116, and receiving or concealing stolen property valued between $1,000 and $20,000, MCL 750.535(3)(a). *People v King*, unpublished per curiam opinion of the Court of Appeals, issued February 11, 2016 (Docket No. 324500), p 1. On October 3, 2014, defendant, was sentenced "as a fourth habitual offender, MCL 769.12, to prison terms of (1) 20 to 80 years for possession of burglar tools," "(2) 10 to 15 years for attempted home invasion," (3) "20 to 80 years for home invasion," and (4) "20 to 80 years for receiving or concealing stolen property. All four sentences are to run concurrently." *Id*.

Defendant's convictions arose out of two separate acts that were charged in separate lower court cases and later joined for trial. *Id*. at 6-7. On February 11, 2016, this Court issued an opinion rejecting all of defendant's arguments except the one pertaining to his sentence, which was that the trial court "erred in exceeding the sentencing guidelines when it sentenced him to a term of imprisonment of 20 to 80 years." *Id*. at 7, 10. With respect to the sentencing issue, this Court relied on *People v Steanhouse*, 313 Mich App 1; 880 NW2d 297 (2015) ("*Steanhouse I*"), rev'd in part, aff'd in part 500 Mich 453 (2017) ("*Steanhouse II*"), to conclude

-1-

that defendant was entitled to a remand for a *Crosby*[1] hearing. *King*, unpub op at 7-8. On November 29, 2017, our Supreme Court entered an order reversing "that part of the judgment of the Court of Appeals remanding this case to the trial court for a hearing under *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015)," and remanding the case "to the Court of Appeals for plenary review of whether the defendant's sentence was disproportionate under the standard set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990)." *People v King*, 501 Mich 920 (2017). We affirm defendant's sentence.

## II. FACTS AND PROCEEDINGS

Defendant first broke into the home of Charles and Judy Lewis sometime between the hours of 11:00 a.m. and 8:30 p.m. on May 21, 2013. Defendant stole a variety of jewelry, worth roughly $15,000. There were no signs of forced entry at the home, and no fingerprints were recovered.

On May 24, 2013, Kristy Rabeau was home with two children when defendant rang her doorbell around 10:30 a.m. Rabeau did not answer; rather, she watched defendant try to open her garage door, and then ring the doorbell to her back door. Rabeau's dogs barked at defendant. Rabeau took her children to a bedroom, retrieved a gun, and called 911. She then saw defendant looking into her bedroom window as she spoke to the 911 operator. Michigan State Trooper Greg Galarneau responded to the report and searched the area for defendant.

Defendant, however, had apparently moved on to a third target. Around 10:30 a.m. or 11:00 a.m., Sarah Graham, who lived a mile away from Rabeau, heard her doorbell ring, and then heard a loud knocking on the door. She thought this was unusual and did not respond. A man appeared and attempted to open a rear door. He then peered in through a window. Graham was unable to see the man's face. The man went to the front of the house and again rang the doorbell. Graham went upstairs, hoping to see the vehicle the man drove to the house. However, she saw Galarneau arrive at her front door. Galarneau had spotted a man matching the description given by Rabeau opening a screen door to Graham's house, and immediately approached this man, defendant.

Defendant spotted Galarneau, who was in a marked police vehicle. Defendant walked toward a green Chevrolet Cavalier parked in Graham's driveway. Craig Theunick was in the driver's seat of this vehicle, which was in gear. Defendant got in the passenger seat, but before the two could escape, Galarneau approached, directed Theunick to stop the engine, and retrieved the keys to the vehicle from Theunick. Neither man could give a reasonable explanation for being at the home. Galarneau handcuffed defendant and patted him down. This search found a circle-shaped piece of plastic, which appeared to be a tool used to unlock a door (as one might use a credit card), and a glove. He also found a syringe and hypodermic needle in defendant's pocket. Galarneau found diamond rings and a velvet pouch as well.

---

[1] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

Galarneau searched the car and found an open backpack containing various pieces of jewelry, a crowbar, a magnet, a magnifying glass, walkie-talkies with headphones, and gloves. He also found a crack pipe under the front passenger seat and another syringe. Some of the jewelry found in the car belonged to Judy Lewis.

Defendant lived in a motel managed by his wife, and where defendant worked as a maintenance employee. Defendant's wife allowed police to search their room, and this search led to the discovery of numerous items of jewelry and jewelry boxes. Defendant's wife acknowledged that the jewelry did not belong to her. Officers were able to return some of the jewelry recovered to the Lewises. Defendant's wife testified that defendant had found the jewelry and other items while cleaning rooms at the motel. She acknowledged that defendant used heroin with Theunick. She acknowledged telling officers that defendant spent $100 a day on heroin. While she denied it at trial, defendant's wife had told officers that she was also addicted to heroin.

Defendant was charged in two lower court cases. In Docket No. 13-021340-FH, defendant was charged with possession of burglar's tools and attempted third-degree home invasion for his attempted burglary of Rabeau's home. In Docket No. 13-021416-FH, defendant was charged with second-degree home invasion and receiving or concealing stolen property for his burglary of the Lewis's home. The two cases were joined for trial, and as noted, defendant was found guilty of all charges.

The parties reconvened for sentencing on October 3, 2014. Some of the prior challenges to the accuracy of the PSIR were resolved by the parties. As the prosecutor explained, "The problem is he has so many aliases and so many Social Securit[y numbers] and so [many] dates of birth that it makes it kind of hard to track." As a result, the probation department now found that defendant had 40 prior felonies and 14 prior misdemeanors. Defense counsel explained that his client still objected to the inclusion of other convictions, but that the probation department had been able to verify these convictions. Defendant's listed criminal history includes arrests and convictions in Maine, Wyoming, New Hampshire, Vermont, Pennsylvania, Idaho, South Carolina, Virginia, Maryland, New York, Florida, and of course, his most recent crimes committed in Michigan. The common themes in these convictions are theft, burglary, the use of illegal drugs, and defendant's attempts to avoid or circumvent punishment. His criminal history begins with an arrest for attempted theft from a vehicle in 1984, when defendant was 18 years old. Since that time, he has committed criminal acts in more years than he has not, and it appears that those periods lacking criminal activity largely coincide with the periods in which he was incarcerated. The probation officer who prepared defendant's PSIR thus understandably wrote that defendant "has the worst criminal record ever seen by this writer. Mr. King is nothing but a thief, and has proven time and time again that no amount of incarceration or rehabilitation will change his behaviors at this time."

The trial court stated the following when sentencing defendant:

First of all, I'd never give a penalty for somebody exercising their right to trial. However, when I hear things at a trial I don't turn my ears off either. When the prosecutor and the defense counsel work on something and they get things within a range of months and I don't know any reason to go outside of it, I follow

-3-

sometimes their recommendations to me. However, when I am presiding over a trial and I hear evidence, I do not turn my ears off to that. When a jury convicts, I do take what they do as an obligation to impose an appropriate penalty when the jury's done their duty either by acquitting and do nothing or finding a conviction and then I impose a sentence within the law.

I'm not unmindful that there is a – by my reckoning the 12-state crime spree even if you take off those ones that the probation department, Department of Corrections looked into there are still multi-state jurisdiction violations and it still comes out that there are guidelines which are substantial time and the amount of convictions are upwards of 40 felonies and 14 misdemeanors, 54 crimes, and that's deleting some that the Department Corrections have tracked down and find that don't belong to you. Half that number, a quarter of that number that remain is still significant. I mean if you – you take the 54 that the probation department has counted up and even if they miscounted some of those that they weren't – they didn't belong to you [be]cause you may have been somewhere else, and I'm not saying that the probation department's wrong, but even if they did and you knocked off 10 percent of that, that would still leave you with like 40 crimes. *I'm just thoroughly convinced that the guidelines do not take into account the amount of damage that you are capable of doing to citizens in this jurisdiction as well as Florida, New York, Pennsylvania, South Carolina, and wherever else you've been that have – were you've committed crimes.* There is – the evaluation and plan, the whole top paragraph is a litany of summary of crimes you've committed, and that's single-spaced I might add.

There are substantial and compelling reasons to exceed the guidelines. The *sheer number of bad acts* here make[s] a[n] upward departure appropriate and there are substantial and compelling reasons such that *the sentencing guidelines do not take into account the number of convictions that you've accumulated, and they don't take into account the nature of these convictions.*

I find home invasions to be very, very serious because of the fright that they put into the occupants. *That mother who had to grab her gun to protect her kids is serious in the – and put those – put that mom and those kids at risk*, and I don't want anybody else in this jurisdiction to think that they can knock on a door and then push their way in and then – or attempt to, you know, when there's people in there without substantial and serious penalties being levied upon them for such unlawful conduct.

So for those reasons that I stated on this record, *the volume of the crimes, the type of crimes* make it clear that an upward departure is – that there are objectable [sic] and verifiable reasons for an upward departure.

This Court has an obligation to look at the following four criteria in the fashioning of a sentence: the discipline of the wrongdoer, protection of society, potential for reformation of the offender, and deterring others from committing like offenses.

It's very clear to me the discipline of the wrongdoer is necessary in order to stop further bad acts and to punish the wrongdoer for breaking into people's homes and stealing their property.

*The protection of society, it's clear from my previous comments is necessary to protect our community from further potential invasions by this Defendant.*

With respect to the potential for reformation of the offender, although this Court generally tries to be optimistic about everybody, *there is clear evidence here that this Defendant has disappointed several judges in the past in several different states in their quest to reform this Defendant and the potential for reformation is very, very slim* unless this Defendant severely changes his way of thinking when it comes to other people's property and the sanctity of people's homes and their property taken, not taking things that don't belong to him.

And then the last thing, of course, deterring others from committing like offenses, I think it's clear that by exceeding the guidelines by a little better than 50 percent at the top end to – take the top end of the guidelines, exceed that by a little better than 50 percent should be – *it's appropriate in this case, but it sets an appropriate example in the future that this type of crime cannot be tolerated in our jurisdiction and it won't be tolerated.* [Emphasis added.]

On July 24, 2017, after our prior opinion was issued, the Supreme Court decided *Steanhouse* and *Masroor*. *Steanhouse II*, 500 Mich 453; 902 NW2d 327 (2017). The Court's decision had, in essence, three major holdings. First, the Court stated, "In *Lockridge*, we held, and today reaffirm, that the legislative sentencing guidelines are advisory *in all applications*." *Id*. at 459. Second, the Court affirmed this Court's decision in *Steanhouse I* to the extent that it found that "the proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), 'which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *Id*. at 459-460. Third, the Court rejected this Court's opinion in *Steanhouse I* to the extent that it found that ordering a *Crosby* remand in every pre-*Lockridge* case where there had been an upward departure sentence was necessary. *Id*. at 460-461. The Court instead held that in such instances, "the proper approach is for the Court of Appeals to determine whether the trial court abused its discretion by violating the principle of proportionality." *Id*.

After the decision in *Steanhouse II*, the Supreme Court reversed "that part of the judgment of the Court of Appeals remanding this case to the trial court for a hearing under" *Lockridge*, and remanded the case to this Court "for plenary review of whether the defendant's sentence was disproportionate under the standard set forth" in *Milbourn*. *King*, 501 Mich 920 (2017). The Court denied leave to appeal in all other respects, *id*., leaving this Court's affirmance of defendant's convictions intact.

### III. ANALYSIS

Defendant's appellate brief challenged whether the reasons stated by the trial court as justifying the departure sentence were substantial and compelling, as was required before our Supreme Court's decision in *Lockridge*. See *Lockridge*, 498 Mich at 391-392. However, in *Lockridge*, the Court concluded that the "substantial and compelling" framework was unconstitutional, and could no longer be applied. *Id*. The Court also held that sentences departing from the sentencing guidelines would thereafter be reviewed for reasonableness, although it did not articulate a precise standard or method of determining if a sentence was reasonable. *Id*.

That standard has since been established. As this Court recently explained in *People v Dixon-Bey*, ___ Mich App ___, ___; ___ NW2d ___ (Docket No. 331499); slip op at 16:

> "A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." [*Steanhouse II*, 500 Mich at 471.] In *Steanhouse* [*II*], the Michigan Supreme Court clarified that "the relevant question for appellate courts reviewing a sentence for reasonableness" is "whether the trial court abused its discretion by violating the principle of proportionality[.]" [*Id*.] The principle of proportionality is one in which
>
>> "a judge helps to fulfill the overall legislative scheme of criminal punishment by taking care to assure that the sentences imposed across the discretionary range are proportionate to the seriousness of the matters that come before the court for sentencing. In making this assessment, the judge, of course, must take into account the nature of the offense and the background of the offender." [[*Id*. at 472, quoting *Milbourn*, 435 Mich at 651].]
>
> Under this principle, " '[T]he key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines recommended range.' " [*Steanhouse II*, 500 Mich at 472,] quoting *Milbourn*, 435 Mich at 661. [*Dixon-Bey*, ___ Mich App at ___; slip op at 16.]

The sentencing guidelines are an "aid to accomplish the purposes of proportionality[.]" *Id*. at ___; slip op at 18. As this Court recently explained:

> Because the guidelines embody the principle of proportionality and trial courts must consult them when sentencing, it follows that they continue to serve as a "useful tool" or "guideposts" for effectively combating disparity in sentencing. Therefore, relevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range continue to include (1) whether the guidelines accurately reflect the seriousness of the crime, *People v Houston*, 448 Mich 312, 321-322, 532 NW2d 508 (1995), see also *Milbourn*, 435

-6-

Mich at 657, (2) factors not considered by the guidelines, *Houston*, 448 Mich at 322-324, see also *Milbourn*, 435 Mich at 660, and (3) factors considered by the guidelines but given inadequate weight, *Houston*, 448 Mich at 324-325, see also *Milbourn*, 435 Mich at 660 n 27. [*Dixon-Bey*, ___ Mich App at ___; slip op at 18-19.]

Other factors to consider "include 'the defendant's misconduct while in custody, *Houston*, 448 Mich at 323, the defendant's expressions of remorse, *id.*, and the defendant's potential for rehabilitation, *id.*' " *Dixon-Bey*, ___ Mich App at ___; slip op at 19 n 9, quoting *Steanhouse I*, 313 Mich App at 46. But, at the same time, both this Court and the Supreme Court have stressed that proportionality review "be based upon the seriousness of the offense and not a deviation from the guidelines . . . ." *Dixon-Bey*, ___ Mich App at ___; slip op at 22. The *Steanhouse II* Court stated it this way:

> The Michigan principle of proportionality, however, does not create such an impermissible presumption. Rather than impermissibly measuring proportionality by reference to deviations from the guidelines, our principle of proportionality requires "sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Milbourn*, 435 Mich at 636. [*Steanhouse II*, 500 Mich at 474.]

Thus, "[w]hen making this determination and sentencing a defendant, a trial court must ' "justify the sentence imposed in order to facilitate appellate review," ' *Steanhouse* [*II*], [500 Mich at 470], quoting *Lockridge*, 498 Mich at 392, which 'includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been,' [*People v*] *Smith*, 482 Mich [292,] 311[; 754 NW2d 284 (2008)]." *Dixon-Bey*, ___ Mich App at ___; slip op at 19.

We conclude that the trial court's sentence was reasonable, as the trial court did not abuse its discretion in determining that the sentences were proportionate to the crimes. *People v Walden*, 319 Mich App 344, 351; 901 NW2d 142 (2017). The record is quite clear that the trial court considered the "nature of the offense and the background of the offender," *Walden*, 319 Mich App at 352 (quotation marks and citation omitted), when it discussed the serious nature of home invasions in general, and these in particular, and when it discussed defendant's remarkably poor criminal background.[2] As detailed below, the trial court also discussed why some of the

---

[2] In *Milbourn*, the Court sanctioned departure sentences when a defendant has an "extensive criminal record[]" because the guidelines do not take such extensive criminal records into account. *Milbourn*, 435 Mich at 657. And in *Smith*, the Court explained that where a defendant's total OV score far exceeds the maximum score contemplated by a particular grid, a proportionate sentence may well depart from the guidelines because "the Legislature did not contemplate a defendant with such a high OV score . . . ." *Smith*, 482 Mich at 308-309. Defendant's past criminal history clearly presents several factors either not accounted for by the guidelines, or that were given inadequate weight. As such, the trial court was well within its

guidelines did not adequately address the circumstances of this case and this offender, *id*. at 352-353; *Dixon-Bey*, ___ Mich App at ___; slip op at 18-19, and reviewed other factors revealing the circumstances of the offender and the crime, including his chance for rehabilitation. The trial court recognized the relevance of the guidelines, but concluded, with sufficient detail, that a longer sentence was more appropriate for this offender. That conclusion was not an abuse of discretion.

Because of when his brief was filed, defendant's argument exclusively focuses upon whether his sentences were supported by substantial and compelling reasons; he contends they were not, because the various factors articulated by the trial court were already considered through various scorings under the guidelines. But the point made most recently by the *Steanhouse II* Court, and previously made by the *Milbourn* Court, is that although trial courts must still *consider* the guidelines when fashioning a sentence, " 'the *key test* is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range[.]' " *Steanhouse II*, 500 Mich at 475, quoting *Milbourn*, 435 Mich at 661 (emphasis added). Consequently, our primary concern in conducting our plenary review[3] is whether the trial court's sentence was proportionate to the seriousness of the crime, which is determined in part by the factors outlined in *Milbourn*. This the trial court did and, thus, the sentences were reasonable.

Finally, we point out that although the trial court never stated that the guidelines did not sufficiently take into consideration the seriousness of home invasions, see *Dixon-Bey*, ___ Mich App at ___; slip op at 19-20 n 10,[4] it did properly take into consideration the seriousness of the circumstances in these particular cases. Despite this one deficiency, we are convinced that the trial court adequately explained the reasons for its decision, and those reasons were-perhaps save one-appropriate considerations in sentencing defendant for these crimes.[5]

---

discretion to consider defendant's criminal history when fashioning an appropriate departure sentence. *Dixon-Bey*, ___ Mich App at ___; slip op at 19.

[3] We agree with the *Walden* Court's statement that the greater discretion given to trial courts in the aftermath of *Lockridge* necessarily "constricts an appellate court's wherewithal to find an abuse of discretion." *Walden*, 319 Mich App at 355. Indeed, the *Steanhouse II* Court pointed out that sentencing decisions were not constricted to consideration of only proportionality principles. *Steanhouse II*, 500 Mich at 473 n 15.

[4] The Court in *Dixon-Bey* remanded for resentencing in part because of the lengthy sentence and none of the factors cited by the trial court "provided reasonable grounds for a departure." *Dixon-Bey*, ___ Mich App at ___; slip op at 19. To the contrary, all but one of the trial court's reasons were geared towards a proper proportionality review.

[5] Defendant's appellate brief states that one of the reasons articulated by the trial court was defendant's lack of remorse. However, defendant never again discusses the issue. Thus, to the extent defendant could be understood as challenging the trial court's purported reliance on his lack of remorse, the issue is abandoned. *People v Bowling*, 299 Mich App 552, 559-560; 830 NW2d 800 (2013).

Affirmed.

/s/ Mark T. Boonstra
/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray